UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FIDEL BORGES SANCHEZ,

      Petitioner,

v.                                    Case No.  2:26-cv-671-JES-NPM

WARDEN, FLORIDA SOFT SIDE
SOUTH DETENTION FACILITY, et
al.,

      Respondents.

_____/

**OPINION AND ORDER**

Petitioner Fidel Borges Sanchez, an immigration detainee currently held at the Krome North Detention Facility, initiated this action by filing a 28 U.S.C. § 2241 petition for writ of habeas corpus.  (Doc. 1).  Respondents filed a response and a supplemental response to the petition.  (Doc. 8; Doc. 15).  Borges Sanchez filed a reply.  (Doc. 11). Upon review of the parties' filings, the Court finds that the petition must be granted.

**I.   Background**

Borges Sanchez, a citizen of Cuba, entered the United States in August of 2009.  (Doc. 1 at 1).  On August 18, 2016, he was convicted of a sexual offense against a minor.  (Doc. 8 at 2).  An immigration judge ordered his removal from the United States to Cuba on March 26, 2019.  (Id.)  Following that order, Borges Sanchez was released under an order of supervision.  (Id.)  On

December 3, 2025, Immigration and Customs Enforcement (ICE) revoked Borges Sanchez's order of supervision, and he was placed in immigration custody. (Doc. 8 at 2). Borges Sanchez suffers from multiple serious health conditions including advanced diabetes, persistent chest pain, dizziness, and progressive vision loss. (Doc. 1 at 6).

On April 30, 2026, ICE transported Borges Sanchez to Hidalgo, Texas near the border with Mexico, but he refused to exit the bus. (Doc. 15-1 at 2).

## II.  Discussion

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." Singh v. U.S. Attorney Gen., 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final. Id. Detention may continue after the removal period, but not indefinitely.

Borges Sanchez argues that he is entitled to release under Zadvydas v. Davis, 533 U.S. 678 (2001), because his post-removal-order detention exceeds six months and there is no significant likelihood of removal in the reasonably foreseeable future. In Zadvydas, the Supreme Court held that "if removal is not reasonably foreseeable, the court should hold continued detention

2

unreasonable and no longer authorized by statute." 533 U.S. at 700-01 (2001). If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." Id. at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." Id. at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. Id. If, after 180 days, the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must provide sufficient evidence to show otherwise. Id.[1]

Here, there is no dispute that Borges Sanchez has been in ICE custody for more than six months following his latest order of removal. Respondents contend that Borges Sanchez is not entitled to release because ICE attempted a third-country removal to Mexico but by failing to voluntarily depart, he has thwarted ICE's efforts at removal.

---

[1] The Supreme Court subsequently clarified that inadmissible aliens held in post-removal detention are also entitled to this type of individualized review after their detention exceeds six months. See Clark v. Martinez, 543 U.S. 371 (2005) (extending Zadvydas's holding to inadmissible aliens as a matter of statutory interpretation).

Title 8 U.S.C. § 1231(a)(1)(C) explicitly provides for extension of the removal period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). The Eleventh Circuit Court of Appeals has recognized that the six-month period may be tolled if the noncitizen "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention." Akinwale, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" Singh, 945 F.3d at 1314 (quoting Pelich v. Immigr. & Naturalization Serv., 329 F.3d 1057, 1060 (9th Cir. 2003)).

Here, Respondents do not show that Borges Sanchez's actions implicated § 1231(a)(1)(C). They offer the declaration of Deportation Officer Gonzalo Partidas who states that "[o]n or about April 30, 2026, removal to Mexico was attempted at Hidalgo, Texas Port of Entry. . . [W]hile ICE attempted to remove the

4

petitioner[,] [Borges Sanchez] refused to comply with removal by refusing to get off the bus." (Doc. 15-1 at 2). It appears from Officer Partidas' declaration that ICE merely transported Borges Sanchez to the Mexican border and asked him to voluntarily depart, which he refused to do. Respondents do not allege that Mexico actually agreed to accept Borges Sanchez or that ICE even had an approved plan for removal to Mexico that he thwarted in some way. Further, assuming that Mexico was willing to accept Petitioner(notwithstanding his criminal record and serious medical conditions), Officer Partidas does not explain why ICE could not or did not thereafter seek travel documents or otherwise plan for his removal to Mexico in a different way, such as a charter flight. In fact, Respondents provide no evidence suggesting that ICE actually communicated with Mexico specifically regarding Borges Sanchez. Nor do Respondents claim that necessary travel documents have been sought—let alone obtained—for any country. Without more, the Court cannot find that Borges Sanchez's actions in Texas prevented his removal and reset Zadvydas' 180-day clock. The Court's confidence in Borges Sanchez's foreseeable removal to Mexico is further undermined by the fact that other district courts recognize that Mexico's acceptance of a Cuban national may be contingent upon the noncitizen's agreement to go there, which Respondents admit they do not have. See Sanchez v. Bondi, et al., No. C25-2573-KKE, 2026 WL 160882, at 3-4 (W.D. Wash. Jan. 21, 2026)

5

(noting that Mexico's conditional acceptance casted doubt on Respondents' ability to remove the petitioner); Arenado-Borges v. Bondi, No. 2:25-cv-2193-JNW, 2020WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025) ("[T]he record suggest Mexico's acceptance may be contingent on the noncitizen's consent").

In short, Respondents present no evidence showing any significant steps taken to remove Borges Sanchez to Cuba or another country. Instead, the only effort at removal was a trip to the United States-Mexico border in an apparent attempt to coerce Borges Sanchez into voluntarily departing to a country of which he is not a citizen. But detaining a noncitizen with serious health complications and using the specter of continued detention to compel him to "voluntarily" depart by walking across the international border does not constitute removal; rather, it is an action designed to lead to the type of indefinite detention that Zadvydas sought to prevent. The Court also notes that ICE waited 148 days before it even took Petitioner to the border of Mexico—far more than the 90 days contemplated by 8 U.S.C. § 1231(a)(1)(A).

Based on the evidence, or lack thereof, the Court finds that Respondents do not show a significant likelihood that Borges Sanchez will be removed in the reasonably foreseeable future. Respondents have had seven years—and more than six months since his present detention—to remove Petitioner and are still unable to articulate a specific plan for his removal to any country. And

6

while there may be some possibility that Mexico will eventually accept Borges Sanchez, "that is not same as a significant likelihood that [he] will be accepted in the *reasonably foreseeable future*." Arenado-Borges, 2025 WL 3687518, at *4 (emphasis added, quotations omitted).

Therefore, Borges Sanchez is entitled to release from detention under Zadvydas, but he remains subject to the terms of an order of supervision. If he fails to comply with the conditions of release, Borges Sanchez may be subject to criminal penalties— including further detention. See 8 U.S.C. § 1253(b); Zadvydas, 533 U.S. at 695("[W]e nowhere deny the right of Congress . . . to subject [aliens] to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

If removal becomes likely in the reasonably foreseeable future, ICE can re-detain Borges Sanchez to "assur[e] [his] presence at the moment of removal." Zadvydas, 533 U.S. at 680.

### III. Conclusion

Accordingly, it is **ORDERED**:

1.    Fidel Borges Sanchez's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** to the extent set forth in this Order.

2.    Respondents shall release Borges Sanchez within 24 hours of this Order, and they shall facilitate his transportation from

7

the detention facility by allowing him telephone access to notify counsel and his family of when and where he can be collected.

3.    The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on June 11, 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE